# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

HOWARD L. WEIGLE,

    Plaintiff,

-vs-                                                    Case No. 6:09-cv-1135-Orl-31DAB

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

### PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on June 16, 2005, alleging an onset date of January 1, 1996 (R. 70). This application was denied initially and on reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ"). On December 7, 2006, the ALJ issued a decision, concluding that Plaintiff was not disabled through September 30, 1999, his date last insured ("DLI") (R. 19-28). The Appeals Council denied Plaintiff's request for review (R. 4), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed his Complaint (Doc. No. 1), and the parties have consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed, and the case is ripe for review under the Social Security Act, 42 U.S.C. § 405(g).

## NATURE OF CLAIMED DISABILITY

Plaintiff claims to be disabled due to "back, lower lumbar fused to tailbone, 4 surgeries" which preclude any ability to "sit, stand or walk for any extended period of time" or "lift and carry any weight" (R. 107-08).

*Summary of Evidence Before the ALJ*

Plaintiff was forty-two years old at the alleged onset date, and forty-five when his disability insurance expired on September 30, 1999 (R. 19, 26, 70). He has a high school education and past relevant work experience as a machinist and electronic cable worker (R. 80, 536).

Plaintiff's pertinent medical history is set forth in the ALJ's decision and in the interests of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. The medical record includes treatment notes from Plaintiff's providers at the time in question, as well as numerous medical records from providers well outside the date last insured. Additionally, the record includes opinions from non-examining state agency reviewers, Plaintiff's testimony at hearing, and vocational reports from non-medical sources.[1] By way of summary, the ALJ determined Plaintiff's severe impairments included a back disorder and hypothyroidism (R. 21), and the record supports this uncontested finding. The ALJ held that, at the time in question the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R 24). After review of the medical evidence and Plaintiff's testimony, the ALJ determined that, through the DLI, Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour

---

[1] As addressed herein, the reports included a vocational evaluation performed pursuant to a worker's compensation claim and a Work Capacities Assessment obtained in connection with Plaintiff's rehabilitation from back surgeries. The Commissioner did not obtain an impartial Vocational Expert to review the matter, and there was no testimony from any Vocational Expert, either privately retained or appointed by the Commissioner, at the hearing.

workday; to sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; to push and/or pull (as in the operation of hand/foot controls); to occasionally climb ramps and stairs, balance, stoop, crouch, crawl, and kneel; and to avoid climbing ladders, ropes, and scaffolding (R. 24).

The ALJ found that Plaintiff could not return to his past relevant work as a machinist (R. 26). The ALJ then determined that Plaintiff's non-exertional limitations "had little or no effect on the occupational base of light work" (R. 27), and, using Medical Vocational Rule 202.21 as a framework, determined that there were other jobs Plaintiff could have performed that existed in significant numbers in the national economy prior to September 30, 1999, and Plaintiff was therefore not disabled through his date last insured (R 27).

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

-3-

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## ISSUES AND ANALYSIS

Plaintiff raises several issues in objection to the decision, asserting that: 1) the ALJ "failed to explain how and why the evidence failed to support a finding that the claimant's insomnia, chronic iron deficiency anemia, fatigue, and obesity were severe;" 2) the ALJ failed to evaluate Plaintiff's obesity; 3) the ALJ misapplied the pain standard; and 4) the ALJ erred in relying exclusively on the Grids and failing to obtain Vocational Expert testimony.

### The "Severe" Impairments

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff contends that the ALJ erred in failing to find his insomnia, anemia, fatigue and obesity to be "severe" at step two. Although Plaintiff has the burden of proof at step two, a claimant's burden of showing severity is mild: "Step two is a threshold inquiry.... Claimant need show only that

her impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Plaintiff contends that he has met this burden as "a full and fair evaluation of Dr. Samitas' records show Plaintiff's insomnia, fatigue, chronic iron-deficiency anemia and obesity were 'severe' conditions." (Doc. No. 16 at 7-8). The Court reviews the ALJ's decision to determine if the ALJ's omission of these impairments at step two is supported by the law and substantial evidence.

As noted by the Commissioner, an impairment is severe only if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The mere diagnosis of an impairment is insufficient to establish that it is severe, within the meaning of the regulations. "[T]he 'severity' of a medically determined disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Applied here, Plaintiff identifies no evidence which demonstrates that his asserted insomnia, anemia, fatigue or obesity significantly limited his ability to do basic work activities with respect to the time period at issue.

Plaintiff contends that insomnia and fatigue are noted on most visits with his internist leading up to the date last insured, citing records at 200-204 and 197-98. These same records, however, indicate only mild complaints and contain no objective findings or opinion that these symptoms, to the extent they are mentioned, impaired his functioning to any degree. On May 15, 1997, Plaintiff presented for renewal of his Nu-Iron, noted that he was under stress due to a family situation but "denie[d] any other complaints" (R. 204). On return visit July 24, 1997, Dr. Samitas noted: "Iron deficiency anemia, resolved." (R. 203). Plaintiff's energy was noted as improved with "some difficulty" sleeping. *Id.* On October 14, 1997, Plaintiff was noted to be "doing well" but was non-compliant with his Nu-Iron (R. 202). Wellbutrin was prescribed for back pain and fatigue. On April

8, 1998 visit, Plaintiff "denie[d] any complaints." (R. 200). It was noted that his anemia was not really improving with therapy, but Plaintiff acknowledged that sometimes he "forgets" to take the medication. *Id.* By the October 17, 1998 visit, his anemia was noted to be stable (R. 197). Notably, the records cited do not address obesity at all, except for a January 5, 1999 treatment note indicating "weight gain, probably related to discontinuing tobacco and his hypothyroidism" (R. 196).

As is clear, Plaintiff manifested no debilitating symptoms of these conditions during the relevant time period, and there were no restrictions or limitations noted by his physician as a result of his weight gain, fatigue or anemia. The ALJ did not err at step two of the evaluation. *See Wilson v. Apfel*, 179 F. 3d 1276 (11th Cir. 1999) (upholding conclusion that ALJ did not err in failing to find claimant's sickle cell disease to be severe at step two where she manifested few symptoms of the disease during the time period.).

**Obesity**

Plaintiff next contends that the ALJ erred in failing to consider his obesity in combination with his other impairments. The Commissioner considers obesity throughout the disability evaluation, including whether a claimant's obesity is severe at step two; whether it, in combination with another impairment, meets a listing at step three; and its effect on the claimant's RFC at steps four and five. Social Security Ruling (SSR) 02-1p. Here, as above, the record does not establish that, during the relevant period of time, Plaintiff was diagnosed with or treated for obesity or that his weight impaired his functioning to any degree.

Although Plaintiff concludes that Plaintiff's Body Mass Index was "above 30" throughout this time period, he fails to cite to any treatment note prior to the DLI were this finding was made.[2] While Plaintiff cites a treatment note stating he was 244 pounds on August 19, 1999 (R.193), that same

---

[2]Plaintiff cites an October 22, 2001 treatment note which indicated a "recent weight gain" (R. 164. This is over two years past the DLI.

treatment note indicates that Plaintiff "denie[d] any complaints" at that visit, and there are no findings of obesity or functional limitations noted with respect to that unremarkable examination. As noted in the Social Security Ruling:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p.

As for considering obesity in combination with other impairments, it is Plaintiff's burden to present evidence that his impairments, alone or in combination, meet the requirements of a Listing. Substantial evidence supports the ALJ's conclusion that he did not do so here (R. 24). The record indicates that Plaintiff has a history of back surgeries pre-dating his alleged onset of disability. Plaintiff had his first microdiscectomy on left L5-S1, in 1991. (R 292). In 1993, he underwent a hemi-laminectomy and then a revision laminectomy and stabilization in June 1994 (R 21, 271). In 1997, after the alleged date of onset, Richard A. Hynes, M.D. removed the bilateral TSR instrumentation/pedicle screws at L5-S1 (R 140). The ALJ acknowledged this history, but noted that Plaintiff's physician had released him to return to work on a "light duty" status (R. 24-25: 125-126). The ALJ also noted the absence of disabling findings during the relevant time period, stating "physical examinations of [Plaintiff's] musculoskeletal system, when performed, were unremarkable" (R 24-25). This finding is supported by substantial evidence (R. 193-208, 263). While Plaintiff contends that the ALJ "never considered" his alleged obesity when evaluating whether his back impairment met a Listing, on this record, "there was no medical evidence from which the ALJ could have concluded that obesity was a severe impairment." *James v. Barnhart*, 177 Fed. Appx. 875, n.2, 2006 WL 995363 (11th Cir. 2006) (unpublished).

### The Pain Standard

Plaintiff next urges that the ALJ misapplied the pain standard in determining that Plaintiff had the RFC to do the full range of light work.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Where an ALJ decides not to credit a claimant's testimony about pain or other limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ summarized Plaintiff's testimony with respect to his assertions of pain and limitations, and addressed these within the context of the Eleventh Circuit's pain standard (R. 24). The ALJ found that Plaintiff's condition "could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely supported by a longitudinal analysis of the record" (R. 24). Plaintiff argues that in so finding, the ALJ erroneously required objective evidence of the severity of the Plaintiff's limitations, "instead of deciding whether or not the evidence of the underlying medical condition 'can reasonably be expected to give rise to the pain.'" (Brief at 13). The ALJ discussed the medical records and Plaintiff's testimony and written statements and determined that, while the condition could have produced pain, there was no support for a conclusion of disabling pain. This finding, if, as here, it is properly supported by substantial evidence, comports with the standard.[3]

Nor is the Court persuaded by Plaintiff's contention that the ALJ based the RFC finding "solely on the medical opinions of non-examining review physicians." Review of the ALJ's opinion shows that this assertion is not true (R. 24-26). Indeed, the ALJ noted that he gave the opinion of Dr. Paine, a treating provider who opined that Plaintiff could return to work, significant weight in his analysis (R. 26). The pain standard was properly applied and substantial evidence supports the ALJ's conclusions with respect to this issue and Plaintiff's credibility.

**Vocational Expert**

The final issue raised by Plaintiff goes to the propriety of determining this matter without the use of Vocational Expert testimony. As noted above, once the ALJ finds that a claimant cannot return

---

[3] The ALJ provided an in-depth analysis of Plaintiff's allegations of pain, noting *inter alia*, the opinions of the treating providers that Plaintiff could return to work light duty, the fact that Plaintiff did not return to his back specialists since 1997 (through DLI), that his physical examinations were unremarkable, that there was no significant treatment for pain during this time, and Plaintiff's statements to his providers that he was looking for work, but no one would hire him (R. 25).

to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "Grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "Grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the Grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559. The ALJ made such a finding here, determining that "the non-exertional limitations contained in the claimant's residual functional capacity assessment have little

or no effect on the occupational base of light work." (R. 27). If this is supported by substantial evidence, the ALJ did not err in not using a Vocational Expert.

Plaintiff challenges this finding indirectly, by asserting that the RFC does not include limitations as to his chronic pain and thus, the RFC assessment is unsupportable and a Vocational Expert was required. While Plaintiff is correct in noting that chronic pain is a non-exertional impairment, the ALJ, as shown above, did not find Plaintiff's pain to be disabling or even severely limiting, and substantial evidence supports that conclusion. As such, the ALJ did not err in relying exclusively on the Grids.

## CONCLUSION

The administrative decision is supported by substantial evidence and was made in accordance with proper legal standards. As such, the decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 21, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record